Union Building Loan Association *v.* Masonic Hall Association.

---

THE UNION BUILDING LOAN ASSOCIATION OF NEW BRUNSWICK

*v.*

THE MASONIC HALL ASSOCIATION OF NEW BRUNSWICK, and others.

1. Building loan associations have power to loan money on the same security as individuals, notwithstanding their usual mode is to require the borrower to assign their own stock as collateral to his mortgage.

2. Where several loan associations made concurrent loans on the same building,—*Held*, that no implied obligation on all of them to require such assignment, arises from the fact that some of them did so; and that the equality of such as did not was not thereby affected.

3. If such stock has been assigned, it must be sold first, and the amount applied on the mortgage.

4. Fines for delinquency (secured by the mortgage) in paying monthly installments on such stock, after assignment as collateral security for the mortgage-money, do not cease on filing a bill to foreclose the mortgage to which the stock is collateral.

---

Bill to foreclose. On final hearing on .pleadings and proofs.

Union Building Loan Association *v.* Masonic Hall Association.

*Mr. S. D. Grimstead,* for complainant.

*Mr. A. V. Schenck,* for the Masonic Hall Association.

*Mr. W. Strong,* for the Mutual Loan, Empire Building and Loan, and Manufacturers and Mechanics Building and Loan Associations.

*Mr. D. R. Boice,* for the Home and New Brunswick Building and Loan Associations.

*Mr. C. T. Cowenhoven,* for the Raritan Building and Loan Association.

*Mr. W. P. Voorhees,* for the Citizens Loan Association.

THE CHANCELLOR.

A number of building loan associations in the city of New Brunswick agreed to lend money to the Masonic Hall Association of that place, on security of mortgage of the real estate of the borrower. The mortgages were to be concurrent liens on the property. The mortgages by which the repayment of the loans was secured were in the form usual among such associations, and in accordance with their well-known methods. That which was given to the complainants acknowledged that the Masonic Hall Association owed to the building loan association the sum of $50,000, and "for the better securing and more sure payment of" that money, and in consideration of one dollar, conveyed the premises to the latter association, with the following proviso : " that if the party aforesaid of the first part (the mortgagors), or their successors, do and shall well and truly pay, or cause to be paid, to the said party of the second part (the mortgagees), or their assigns, the interest on the said principal sum of $50,000, together with the regular monthly installments of one dollar on each share of stock owned by the said The Masonic Hall Association of New

Brunswick in the said The Union Building Loan Association of New Brunswick, on the second Thursday in each and every month hereafter (the said interest to be at the rate of one-half of one per cent. per month), until the said principal sum of $50,000 shall be paid; and in case the said The Masonic Hall Association of New Brunswick shall neglect, for the space of three months, to pay said monthly installments of one dollar on each share of their stock in the said The Union Building Loan Association of New Brunswick; or in case of three months' interest on said principal sum of $50,000 being at any time in arrears and unpaid, then, if the said The Masonic Hall Association of New Brunswick, or their successors, shall immediately pay to the said The Union Building Loan Association of New Brunswick, or their assigns, the said principal sum of $50,000, with interest, as aforesaid, together with all fines that may have been incurred under the provisions of the constitution of the said The Union Building Loan Association, by reason of such neglect or refusal, without any deduction or defalcation for taxes, assessments or any other imposition whatever, according to the condition of the above-mentioned obligation, then and from thenceforth these presents and the before-mentioned obligation shall cease, determine and be void, &c."

The Masonic Hall Association borrowed the $50,000 on the basis of their ownership of two hundred and fifty shares of the stock of the building loan association, and they made an assignment to the latter, accordingly, of that number of shares, as collateral security for the payment of the money intended to be secured by the mortgage; but, in fact, they owned only two hundred and fifteen shares, and never acquired any more.

The Empire Building and Loan Association in like manner failed to obtain, as collateral security, the full number of shares of stock which the assignment to them of stock as collateral security purported to transfer.

The building loan associations defendants in this suit, insist that, in the distribution of the proceeds of the sale of the mortgaged premises, if there should not be sufficient to pay all the mortgages in full, the complainants and the Empire Association ought, under the circumstances, in equity, to be postponed as to the payment of so much of the principal of their respective debts, and interest thereon, as is unsecured by collateral security of stock, until after the debts of the other associations shall have been paid therefrom. This claim of equity is based on the assumption that the complainants and the Empire Association, as between them and the other associations which obtained collateral security of stock to the full extent of their loans, were bound to obtain such security to a like extent. There was no agreement between the mortgagees that any collateral security whatever should be obtained; but it is insisted that an implied agreement arose from the nature of the organization, business and objects of the lenders of the money. Such an implication, however, did not arise. A building loan association may lawfully lend its money to its members or other persons, on adequate and proper security, in the ordinary way, instead of the way peculiar to such associations. That the complainants intended to obtain collateral security in stock to the full amount of their loan is not questioned. That they have failed to do so is obviously to their disadvantage to the extent of the failure, for they have so much less security for their debt; but in the absence of any agreement, there was no obligation upon them, in equity, as between them and the other building loan associations, to obtain such security.

It is insisted by the defendant mortgagees that the stock held as collateral to the loans secured by the building loan association mortgages should not be sold, but that the associations holding it should be permitted to take it on account of the money due on their mortgages at the amount which the Masonic Hall Association would, by the regulations of the associations, be entitled to receive for it on withdrawal

from them—that is, the amount of dues actually paid after deducting therefrom all fines and forfeitures. The argument is, that if the stock be sold in the market it will bring a larger price than that, because of the fact that it is worth more; but such increased price will be due, in part, to the payments made by other stockholders who have not proved delinquent in meeting their engagements with the association, and so the delinquent stockholder will, by means of such enhanced price, be enabled to share in profits which he should be held to have forfeited by his delinquency. The purchaser, however, will take the stock subject to all the liabilities of the present owner, among which is that of paying up any arrears of monthly dues and fines. He will receive, on withdrawal from the association, only the value, according to the regulation above mentioned.

The question is not between the association and the delinquent stockholder, but between the association, as mortgagee, and the other associations holding mortgages on the same property. These latter associations have the right to have the stock sold in the market. The purchaser, as before suggested, must take it burdened with the obligation, on his part, to pay all dues and fines thereon, and when these shall have been paid the delinquency will have ceased.

A further question was discussed on the hearing, whether the fines, the payment whereof was intended to be secured by the mortgage, are recoverable for the time which has elapsed since the filing of the bill to foreclose. The obligation to pay the monthly installments and interest did not cease with the commencement of the suit; neither did the obligation to pay fines in case of default to make these payments. Though they are penalties, they are lawful, and it is an important part of the contract that they shall be paid in case of default in the payment of the interest.